IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:22-CV-466-FL

| | |
|---|---|
| JUSTIN LANTERMAN, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> ) <br> CAROLINA MOTOR CLUB, INC., AAA ) <br> Carolinas, a non-profit corporation, ) <br> and THE AUTO CLUB GROUP, a non- ) <br> profit corporation ) <br> ) <br> Defendants. ) | ORDER |

This matter is before the court on defendants' motion to dismiss for failure to state a claim. (DE 9). The motion has been briefed fully, and in this posture the issues raised are ripe for ruling. For the following reasons, the motion is granted in part and denied in part.

## STATEMENT OF THE CASE

Plaintiff commenced this employment discrimination action on October 3, 2022, in the Superior Court of Wake County, North Carolina, asserting wrongful termination under the Americans with Disabilities Act, ("ADA"), 42 U.S.C. §12112, and N.C.G.S. § 95-28.2, and for wrongful discharge in violation of North Carolina public policy, see N.C.G.S. §§ 95-28.2, 143-422.2, and 168A-2, relying upon a charge of discrimination filed with the Equal Employment Opportunity Commission ("EEOC").

Defendants removed to this court November 18, 2022, on the basis of federal question jurisdiction, under 28 U.S.C. §§ 1331, 1367(a), 1441, and 1446. Defendants filed the instant motion to dismiss November 23, 2022, relying upon an employment policy, a letter of termination dated October 19, 2021, and a specimen result certificate. Plaintiff filed motion for entry of default December 21, 2022, however, he withdrew it the same day. After obtaining an extension of time, plaintiff responded to the motion to dismiss. Defendants moved subsequently for an extension of time to file its reply and for leave to file a reply in excess of the word and page limitations, however, this motion was deficient in several respects and, following two notices of deficiency by the clerk, defendants filed their reply in accordance with the deadlines and length requirements set by local rules, and defendants' motion for an exception to the local rules therefore was terminated as moot.

### STATEMENT OF FACTS

The relevant facts alleged in the complaint may be summarized as follows. Plaintiff, who worked for defendants between 2014 and 2021, (see compl. ¶ 1), suffered from an eye disease called keratoconus during the entire term of his employment. (See id. ¶ 6). On the evening of Tuesday, September 28, 2021, plaintiff allegedly used "a lawful CBD vape product," (id. ¶ 17), with a label showing that the product contained less than 0.3% THC, (id. ¶ 19), for relief of symptoms associated with the rejection of a corneal transplant he had received about two years previously. (See id. ¶¶ 9, 15, 17). Plaintiff "had taken paid time off ('PTO')" for the following day "in order to rest his eye." (Id. ¶ 23).

The following day, plaintiff received a call from Scott Stilwell ("Stilwell") directing him to drive to Apex, North Carolina in order to perform an audit of defendants' car care center. (See id. ¶ 24). Plaintiff "objected, explaining . . . that he was on PTO leave, and that he needed the time

2

Case 5:22-cv-00466-FL   Document 27   Filed 06/13/23   Page 2 of 14

off to rest his inflamed and painful eye, but [Stilwell] nevertheless required that [plaintiff] travel to . . . Apex." (Id.). On the way to Apex, plaintiff hit another vehicle while attempting to back out of an intersection. (See id. ¶ 25). A responding police officer declined to cite plaintiff for a traffic violation, confirming that plaintiff was not "physically or mentally impaired [or] suspected of being under the influence of alcohol or drugs," and that no one was injured. (Id. ¶ 25).

Defendants' safety manager, Jason Nadalsky ("Nadalsky") "instructed [plaintiff] to submit to drug testing" following the accident, (id. ¶ 27), and plaintiff thereafter was informed that he had tested positive for THC. (See ¶ 32). Plaintiff's employment was "suspended while . . . [d]efendants investigated." (See ¶ 37). Either Alison Krumm ("Krumm,"), defendant ACG's Director of HR Operations, or Don Sain ("Sain"), defendant ACG's General Counsel, or both allegedly "told . . . Stilwell that the issue was 'very black and white,' and they had to terminate [plaintiff's] employment." (Id. ¶ 38). Stilwell contacted Jim McCafferty ("McCafferty,") defendant CMC's Chief Operating Officer, to intervene on plaintiff's behalf, (see ¶ 37), and plaintiff's former supervisor "wrote to defendants' management, describing [plaintiff's] exemplary performance over the [seven] years since he was hired . . . and proposing a number of alternatives to termination including weekly drug tests, hair follicle tests, and demoting and transferring [plaintiff] to a non-leadership role." (Id. ¶ 40).

On October 14, Krum informed plaintiff that defendants had decided to terminate his employment, giving him the choice between quitting, and receiving two weeks' pay, or being fired. (See id. ¶ 41). Stilwell intervened again on plaintiff's behalf, "describing the improvement in [plaintiff's] eye condition since he saw his doctor" in an email addressed to McCafferty, Philander Harvey ("Harvey"), defendant CMC's Vice President of Retail Automotive, and Krumm. (See id. ¶ 42). Thereafter, plaintiff "received paperwork "stating that [his] suspension had been converted

3

into a termination effective October 20, 2021, and that he was terminated for 'improper conduct' and 'violation of policy or procedure,' specifically, 'based upon the positive test result' for marijuana." (Id. ¶ 46).

Plaintiff filed a charge with the EEOC on April 14, 2022, (see id. ¶ 60), and received notice of right to sue August 15, 2022. (See id. ¶ 63).

## COURT'S DISCUSSION

A. Standard of Review

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).[1] "Factual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555. In evaluating whether a claim is stated, "[the] court accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff," but does not consider "legal conclusions, elements of a cause of action, . . . bare assertions devoid of further factual enhancement[,] . . . unwarranted inferences, unreasonable conclusions, or arguments." Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 255 (4th Cir. 2009) (quotations omitted).

B. Analysis

1. ADA

The ADA "prohibits an employer from discriminating against an individual with a disability who, with [or without] reasonable accommodation, can perform the essential functions of the job." U.S. Airways v. Barnett, 535 U.S. 391, 393 (2002). As relevant in this case, the ADA

---

[1] Throughout this order, internal quotation marks and citations are omitted unless otherwise specified.

4

"prohibits employers from discriminating against a qualified individual on the basis of disability in regard to . . . discharge" and from "failing to make reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability." Lashley v. Spartanburg Methodist College, 66 F.4th 168, 178 (4th Cir. 2023); see also 42 U.S. §§ 12112(a), 1212(b)(5)(A).

At this stage in the litigation, "a plaintiff is not required to plead facts that constitute a prima facie case." Coleman v. Md. Ct. of Appeals, 646 F.3d 187, 190 (4th Cir. 2010). Instead, plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant[s are] liable for" violating the ADA. Iqbal, 556 U.S. at 663 (2009).

      a.      Failure to Accommodate

Plaintiff has alleged facts sufficient to support a failure to accommodate claim under the ADA.

"Employers must provide reasonable accommodations that are needed for those with disabilities to obtain the same workplace opportunities that those without disabilities automatically enjoy." U.S. Airways, 535 U.S. at 397. In order "to prevail on a failure to accommodate claim, a plaintiff must show 1) []he was disabled, 2) the employer had notice of [his] disability, 3) []he could perform the essential functions of [his] position with a reasonable accommodation, and 4) the employer refused to make such accommodation." Lashley, 66 F.4th at 178.

           i.      Request for Time Off

Defendants' alleged refusal to grant plaintiff's request for time off to rest his eye meets all four factors. Neither party disputes that plaintiff was disabled during the relevant timeframe. According to the complaint, plaintiff "was very open with his superiors regarding his [k]eratoconus and related health issues, and specifically discussed these issues with" his supervisors over a period

5

of three years. (Compl. ¶ 10). In addition, plaintiff specifically alleges that when directed "to drive to [d]efendants' [c]ar [c]ar e [c]enter in Apex, NC, and perform an audit," he "objected, explaining . . . that he was on [paid time off ] leave, and that he needed the time off to rest his inflamed and painful eye." (Compl. ¶ 24). That plaintiff could perform the essential functions of his job is evidenced inter alia by his routine receipt of "above-average performance reviews," (compl. ¶ 8), and by the fact that he "had never been written up or disciplined by" defendants before this incident. (Compl. ¶ 37). Defendants refused to grant time off, and plaintiff allegedly was required to drive to Apex. (See id. ¶ 24). While the reasonableness of requested accommodations ordinarily is a question for summary judgment, see, e.g., Halpern v. Wake Forest University Health Sciences, 669 F.3d 454, 465 (4th Cir. 2012) (affirming a grant of summary judgment based in part on a finding that the requested accommodation at issue was unreasonable); Perdue v. Sanofi-Aventis U.S., LLC, 999 F.3d 954, 961-62 (4th Cir. 2021) (holding that "summary judgment should have been granted to" defendant on the grounds that plaintiff's proposed accommodation "was not a reasonable accommodation required by the ADA."), the court notes at this stage that the United States Court of Appeals for the Fourth Circuit has held previously that reasonable accommodations "may comprise . . . part-time or modified work schedules and permitting the use of accrued paid leave or providing additional unpaid leave." Wilson v. Dollar General Corp., 717 F.3d 337, 344 (4th Cir. 2013) (citing 29 C.F.R. §1630.2(o)). Thus, plaintiff has alleged that he requested an accommodation that the Fourth Circuit has previously found reasonable, demonstrating all that is required for his claim to survive this stage.

Defendants argue that plaintiff attempted improperly to amend his complaint by response memorandum where the complaint "does not actually allege that his request for PTO on September 29, 2021[,] was a request for a reasonable accommodation." (DE 26 at 1). "Viewing the

6

allegations of the complaint as a whole," however, "the complaint alleges facts suggesting" that defendants improperly refused to grant plaintiff his request for a reasonable accommodation. Matrixx Initiatives, Inc. v. Siracusano, 563 U.S. 27, 47 (2011); see also Sanford v. Smith, 490 Fed. Appx. 570, 571 (4th Cir. 2012) (requiring a "fair reading of [a] complaint as a whole").

The court also rejects defendants' argument that plaintiff failed to exhaust his administrative remedies where his EEOC charge does not specifically allege that he requested time off to rest his eye. Plaintiff may bring suit without alleging identical facts in an EEOC charge as long as the claims in his judicial complaint are "reasonably related to [his] EEOC charge and can be expected to follow from a reasonable administrative investigation." Cowgill v. First Data Technologies, Inc., 41 F.4th 370, 384 (4th Cir. 2022); see also Alvarado v. Board of Trustees of Montgomery Community College, 848 F.2d 457 (4th Cir. 1988) ("EEOC charges must be construed with utmost liberality since they are made by those unschooled in the technicalities of formal pleading."). Plaintiff's EEOC charge describes his Kerataconus, discloses his use of a CBD product, notes that he was "unexpectedly called into work," and accuses defendants of "interferer[ing] with a lawful accommodation of [his] condition." (DE 26-1 at 2). Construing the EEOC charge liberally, as the court must under Alvarado, results in the conclusion that defendants had "notice of the alleged violations." Cowgill, 41 F.4th at 384.

    ii.  Other Asserted Requests for Accommodation

Plaintiff's failure to accommodate claim may not, however, move forward on the theory that defendants' refusal to retest his urine sample, treat the test as a false positive, or pursue alternatives to termination violated the ADA's failure to accommodate provision. Although, as explained above, plaintiff has alleged successfully that he was disabled, that his employer had notice of his disability, and that he could perform the essential functions of his job, his "argument

7

falters on the [last] prong[]" where plaintiff "cannot show that [defendants] refused to make an accommodation because []he cannot show that []he ever properly requested one." Lashley, 66 F.4th at 179. Plaintiff's supervisor, not plaintiff, allegedly "suggest[ed] alternatives to termination including demotion, loss of company vehicle use, and weekly drug testing," (compl. ¶ 39), and plaintiff's former supervisor "propos[ed] a number of alternatives to termination including weekly drug tests, hair follicle tests, and demoting and transferring [plaintiff] to a non-leadership role[.]" (Id. ¶ 42). Plaintiff's appeal of his termination did not include a request for accommodation. (See id. ¶ 47). Accordingly, where "an employee [must] communicate[] . . . his desire for an accommodation" before an employer may properly be held to have refused such accommodation, plaintiff's claim is dismissed to the extent that it faults defendants for declining to meet demands plaintiff never made. Wilson, 717 F.3d at 346.

Plaintiff argues that his explanation that his "test result was caused by his lawful use of a lawful CBD product implicitly ask[e]d that the [d]efendants treat the test as a false positive or innocent mistake." (DE 21 at 9). This argument fails where the ADA requires plaintiff to make an "adequate request," a standard not met by these allegations, which do not show that plaintiff asked defendants to take any action. Wilson, 717 F.3d at 347. Additionally, plaintiff's assertion that the complaint alleges "that both he and his supervisors repeatedly proposed discipline short of termination" simply is incorrect where the cited paragraphs describe only proposals by plaintiff's supervisors. (DE 21 at 9).

In sum, that part of plaintiff's failure to accommodate claim based upon request for time off may proceed, but that part his claim based upon other asserted requests for accommodation is dismissed for failure to state a claim.

b.  Discharge

Defendants argue that plaintiff's ADA termination claim must be dismissed for failure to allege facts sufficient to infer a causal link between plaintiff's disability and his termination.  The court agrees.

"To establish a claim for disability discrimination under the ADA, a plaintiff must prove (1) that []he has a disability, (2) that []he is a qualified individual for the employment in question, and (3) that [his] employer discharged him . . . because of [his] disability."  Jacobs v. N.C. Administrative Office of the Courts, 780 F.3d 562, 572 (4th Cir. 2015); see also Craddock v. Lincoln National Life Insurance Co., 533 Fed. Appx. 333, 337 (4th Cir. 2013) (requiring "allegations render[ing] plausible [plaintiff's] claim that []he was discharged on the basis of [his] disability" to state a claim for disability discrimination based on wrongful discharge).

The complaint does not contain allegations supporting a reasonable inference that plaintiff's disability played a role in defendants' decision to discharge him.  According to the complaint, plaintiff "was very open with his superiors regarding his Keratoconus and related health issues, and specifically discussed these issues with [] Stillwell and his prior supervisor, [] Rush . . . in 2019, 2020[,] and 2021," (compl. ¶ 10), however, these superiors opposed plaintiff's discharge.  (See compl. ¶ 39-40, 42-45). "Defendants' Safety Manager, Jason Nadalsky, who instructed [plaintiff] to submit to drug testing," appears from the complaint to have had no knowledge of plaintiff's condition or the products he may have used to treat it.  (Compl. ¶ 28).  Also missing from the complaint is any allegation that [defendant] "ACG's Director of H[uman] R[esources], Alison Krumm, [or its] General Counsel, Don Sain" knew of plaintiff's condition at the time they informed Stilwell that "the issue was 'very black and white,' and they had to terminate" plaintiff.

9

(Id. ¶ 38). Taking the allegations in the complaint as true,[2] Krum did not know of plaintiff's disability until after she informed plaintiff that defendants "had completed their investigation" and decided to terminate plaintiff's employment. (Id. ¶ 41-42). In addition and in the alternative, plaintiff simply has failed to allege that his disability played any role in defendants' decision making. Where plaintiff has not alleged facts supporting a reasonable inference that his "employer discharged him "because of [his] disability," his ADA claim stemming from the termination of his employment fails. Jacobs, 780 F.3d at 572.

Plaintiff argues he "alleged many facts supporting the inference that [d]efendants acted because of a discriminatory animus, including their placement of a non-disabled person in his position prior to the determination of his appeal." (DE 21 at 16). "While the allegation that non-[disabled] decisionmakers hired non-[disabled] applicants instead of [retaining] plaintiff is consistent with discrimination, it does not alone support a reasonable inference that decisionmakers were motivated by bias." McCleary-Evans v. Maryland Department of Transportation, State Highway Administration, 780 F.3d 582, 585 (4th Cir. 2015). Indeed, plaintiff's descriptions of strong support from those who did know of his disability at the time of the accident and investigation, paired with allegations against upper management that are merely "consistent with discrimination," render implausible an inference that plaintiff's termination violated the ADA. Id.

    2.    State Claims

        a.    N.C.G.S. § 95-28.2

Plaintiff properly states a claim for violation of N.C.G.S. § 95-28.2.

---

[2] The complaint references emails to defendant CMC's Chief Operating Officer, McCafferty, and unnamed members of "[d]efendants' management" on October 6 and 8, 2021, which disclosed plaintiff's disability, but contains no allegations suggesting that these individuals participated in the investigation of plaintiff or made any decisions regarding his termination. (Compl. ¶¶ 39-40).

North Carolina provides by statute that

> it is an unlawful employment practice for an employer to . . . discharge . . . any employee . . . because the . . . employee engages in or has engaged in the lawful use of lawful products if the activity occurs off the premises of the employer during nonworking hours and does not adversely affect the employee's job performance or the person's ability to properly fulfill the responsibilities of the position in question or the safety of other employees.

N.C.G.S. § 95-28.2(b); see also Smith v. Manheim Remarketing, Inc., No. 5:19-CV-086, 2019 WL 12872745 at *4-5 (W.D.N.C. 2019) (finding plaintiff had stated a claim under this statute where she was terminated following use of a legal CBD product and failure of a drug test).[3]

Plaintiff alleges that he "received paperwork that was written . . . by . . . Krum on [defendant] ACG letterhead . . . stating that [plaintiff's] suspension had been converted to a termination . . . and that he was terminated . . . 'based on the positive test result'" for THC. (Compl. ¶ 46). Plaintiff alleges in addition that he used "a lawful CBD vape product . . . when he was at home and off-duty." (Id. ¶ 17). Finally, plaintiff alleges facts sufficient to allow the court to draw a reasonable inference that plaintiff's job performance, ability properly to fulfill his job responsibilities, and the safety of other employees were not adversely affected, see N.C.G.S. § 95-28.2, where "a police officer . . . confirmed that [plaintiff was not] physically or mentally impaired [or] suspected of being under the influence of alcohol or drugs," no one was injured, and no citations for traffic violations were issued. (Compl. ¶ 25). Where plaintiff has stated facts sufficient for this court to draw the reasonable inference that the statute was violated, defendants' motion to dismiss on this ground is denied.

Defendants contend that plaintiff's termination was not unlawful because "it was related to a bona fide occupational requirement and reasonably related to defendants' activities. (DE 10 at 19). Existence of a bona fide occupational requirement ordinarily is a question for summary

---

[3] Neither the Fourth Circuit nor the North Carolina Supreme Court have undertaken analysis of this statute.

judgment. See International Union, United Auto., Aerospace and Agr. Implement Workers of America, UAW, et al v. Johnson Controls, Inc. 499 U.S. 187, 200 (1991) (requiring employer to establish a bona fide occupational qualification on remand of an order granting summary judgment in a Title VII context); see also Anderson v. Diamondback Investment Group, LLC, No. 1:21-CV-778, 2023 WL 2503308 at *8-9 (W.D.N.C. 2023) (finding at the summary judgment stage that defendants had shown their drug testing policy to be a "bona fide occupational requirement reasonably related to [their] employment activities" under N.C.G.S. § 95-28.2). Defendants contention that the court may decide this issue early where "all facts necessary . . . appear on the face of the complaint," (DE 26 at 9), fails where, as the court explains above, the facts stated in the complaint tend instead to support an inference of unlawful action.

        b.        Common Law Wrongful Discharge

Plaintiff asserts a common law claim for wrongful discharge in violation of North Carolina public policy as expressed in N.C.G.S. §§ 95-28.2, explained above, 143-422.2, which provides that "it is the public policy of [North Carolina] to protect . . . the right and opportunity of all persons to . . . hold employment without discrimination or abridgement on account of . . . handicap," N.C.G.S. § 133-422.2, and 168A, which prohibits employment discrimination on the basis of "a disabling condition." N.C.G.S. § 168A-5(a)(1). For the reasons substantially explained above, plaintiff's common law claim based upon use of a lawful substance survives and his claim based on disability discrimination fails.

In North Carolina, "an employee without a definite term of employment [ordinarily] is an employee at will and may be discharged without reason." Coman v. Thomas Manufacturing Co., Inc., 325 N.C. 172, 175 (1989). An exception to this general rule exists, however, "when the employer's acts violate the public policy of North Carolina." Young v. Bailey, 368 N.C. 665, 668

12

(2016). "Although the definition of public policy approved by [the North Carolina Supreme] Court does not include a laundry list . . . at the very least public policy is violated when an employee is fired in contravention of express policy declarations contained in the North Carolina General Statutes." Amos v. Oakdale Knitting Co., 331 N.C. 348, 353 (1992).

With respect to that part of plaintiff's wrongful termination claim based on disability discrimination, North Carolina courts "look to federal decisions for guidance in establishing . . . principles of law to be applied in discrimination cases." North Carolina Department of Correction v. Gibson, 308 N.C. 131, 136 (1983). Accordingly, plaintiff's "state law wrongful discharge claim . . . fail[s] for the same reasons [his] ADA arguments fail." Perdue v. Sanofi-Aventis U.S., LLC, 999 F.3d 954, 962 n.5 (4th Cir. 2021).

Plaintiff's wrongful termination claim based on use of a lawful product also fails. As the North Carolina Supreme Court has held, while

> the existence of an alternative remedy does not automatically preclude a claim for wrongful discharge based on the public policy exception . . . if [the North Carolina] state legislature has expressed its intent to supplant the common law with exclusive statutory remedies, then common law actions, such as wrongful discharge, will be precluded.

Amos v. Oakdale Knitting Co., 331 N.C. 348, 357 (1992). When the "General Assembly . . . elects to legislate in respect to the subject matter of any common law rule, the statute supplants the common law rule." McMichael v. Proctor, 243 N.C. 479, 483 (1956). See also Stover v. Lincoln Pub. Inc, No. 95-1832, 1995 WL 764180 at *6 (4th Cir. 1995) (holding that the legislature's creation of "a direct remedy for wrongful discharge in a certain circumstance . . . clearly evidences a legislative intent to provide an exclusive statutory remedy for such a claim"). Accordingly, plaintiff's common law claim for wrongful discharge has been supplanted by N.C.G.S. § 95-28.2 and therefore is dismissed.

## CONCLUSION

Based on the foregoing defendants' motion to dismiss (DE 9), is GRANTED IN PART and DENIED IN PART as set forth herein. Plaintiff's ADA claim based on failure to accommodate his request for time off and his claim for violation of N.C.G.S. § 95-28.2 are allowed to proceed. Plaintiff's remaining claims are DISMISSED for failure to state a claim for which relief can be granted, under Rule 12(b)(6). In accordance with Rule 12(a)(4), defendant must serve a responsive pleading to the complaint within 14 days of entry of this order.

SO ORDERED, this the 13th day of June, 2023.

_____
LOUISE W. FLANAGAN
United States District Judge